SO ORDERED: March 19, 2019.



James M. Carr
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: | ) |
| | ) |
| LUPAE KATHRYN HUNSICKER, | ) Case No. 18-04598-JMC-13 |
| | ) |
| Debtor. | ) |
| | ) |

### ORDER AWARDING ACTUAL DAMAGES
### FOR WILLFUL VIOLATION OF THE AUTOMATIC STAY

THIS MATTER comes before the Court on the *Amended Emergency Motion for Sanctions for Violation of the Automatic Stay* filed by Lupae Kathryn Hunsicker ("Debtor") on November 7, 2018 (Docket No. 51) (the "Motion"). The Court, having reviewed the Motion, the *Certificate of Compliance* filed by the Indiana Department of Revenue ("IDR") on January 16, 2019 (Docket No. 72), and the *Initial Order on Amended Emergency Motion for Sanctions for Violation of the Automatic Stay* entered by the Court on November 8, 2018 (Docket No. 60) (the "Initial Order"), having heard the representations and arguments of counsel for Debtor and counsel for IDR at hearings on November 8, 2018 and January 17, 2019 (collectively, the

"Hearing"), having weighed the credibility of the witnesses, having considered the evidence admitted at the Hearing and determined the weight thereof, and being otherwise duly advised, now **GRANTS** the Motion as follows.

*IDR's Collection Activities*

Debtor owed a pre-petition debt to IDR. As early as 2016, IDR issued tax warrant 11080486 (the "Warrant") with respect to such debt, and the Marion County Sheriff's Department ("MCSD") attempted to levy on the Warrant and collect the debt owed by Debtor to IDR. Pursuant to Indiana Code § 6-8.1-8-3(a), MCSD may attempt to collect on any given warrant only "for a period of one hundred twenty (120) days from the date the judgment lien is entered, unless [MCSD] is relieved of that duty at an earlier time by [IDR]." Based on the testimony of Lori Wyeth, MCSD's supervisor of tax collections, MCSD will routinely request a re-issuance of a warrant if a particular taxpayer is paying on his/her warrant after the expiration of a 120-day period.

In this instance, Ms. Wyeth testified that Debtor was paying on the Warrant and MCSD requested a re-issuance of Debtor's Warrant in 2016.[1] Ms. Wyeth further testified that MCSD did not know of any withdrawal by IDR of the Warrant until October 17, 2018 when IDR told MCSD that Debtor was working with IDR's taxpayer advocate office. Ms. Wyeth also testified that she and others at MCSD believed that IDR had authorized MCSD to continue collection efforts regarding the Warrant until October 17, 2018. This testimony contradicts documentary evidence admitted at the Hearing that (1) IDR advised MCSD by Warrant Status Letters dated November 21, 2016 and December 2, 2016 (collectively, the "2016 Letters") that the Warrant was over 120 days old and should be returned; and (2) IDR advised MCSD by Warrant Status

---

[1] Ms. Wyeth did not testify as to how many times the Warrant was re-issued at the request of MCSD or otherwise.

Letters dated October 23, 2017 and November 22, 2017 (collectively, the "2017 Letters") that IDR would not pay MCSD a damages/collection fee "due to the fact that the remittance was received after your allotted time for collection had expired." (Creditor's Exhibit 2.) There was no testimony with respect to the date or manner of transmission of such letters from IDR to MCSD, or MCSD's receipt of such letters.

On June 15, 2018, Debtor filed her voluntary chapter 13 bankruptcy petition, initiating this case and giving rise to the automatic stay of 11 U.S.C. § 362.[2] On or about October 9, 2018, pursuant to the Warrant, MCSD collected a total of $1,124.88 from bank accounts at Old National Bank: (1) $252.23 from an account in the name of William Hunsicker, Debtor's husband (the "Husband's Account"); and (2) $872.65 from a joint account in the names of Debtor or William Hunsicker. (Debtor's Exhibit A.) Ms. Wyeth testified that MCSD received those funds, subtracted its fee therefrom, and remitted $1,012.39 to IDR. As a result of such levies, Old National Bank charged a $75 legal order processing fee against the joint account (Debtor's Exhibit A), and Debtor testified that she incurred NSF charges of $114 (3 charges at $38 each), late fees of $80 with respect to late payment of her son's tuition (2 fees at $40 each), a late fee of $30 with respect to her late car payment, and a late fee of $22 with respect to her late cell phone payment.

Debtor and/or her counsel contacted IDR after these levies. Evidence of a series of email communications between IDR representatives and MCSD representatives was admitted into evidence at the Hearing, including (1) an email dated October 17, 2018 from IDR to Ms. Wyeth regarding releasing any levy or garnishment because Debtor was working with IDR's taxpayer advocate office (Debtor's Exhibit D and Creditor's Exhibit 3); (2) an email dated October 18,

---

[2]   Unless otherwise noted, all statutory references herein are to the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*

2018 from IDR to Ms. Wyeth that notified MCSD of Debtor's active bankruptcy case, apparently for the first time, and requested "another release just to be sure that IF in fact there is a levy that the levy comes off ASAP due to [Debtor's] active bankruptcy" (Debtor's Exhibit D and Creditor's Exhibit 3; emphasis in original); and (3) an email dated November 1, 2018 from IDR to Ms. Wyeth again notifying MCSD that "[Debtor] is in active bankruptcy case" (Debtor's Exhibit E and Creditor's Exhibit 3).[3]

Ms. Wyeth testified as to the process that MCSD implements when it is informed of a bankruptcy case but did not testify that such process was implemented with respect to the Warrant on or after October 18, 2018. Instead, she described a system of changing the status of Debtor's Warrant among "S", "P" and/or "W", which ultimately was not successful in stopping MCSD's levies against the accounts of Debtor and other members of her family.

On or about October 31, 2018, pursuant to the Warrant, $260 was levied from a bank account at PNC Bank in the name of Debtor and her son.[4] (Debtor's Exhibit A.) Ms. Wyeth's testimony indicates that MCSD received a check for such funds from PNC Bank on or about November 16, 2018.[5] Even though IDR and MCSD had several communications regarding the release of the Warrant prior to November 16th, and Ms. Wyeth testified that the notes regarding such communications were available to MCSD's cash office personnel, MCSD cashed the PNC

---

[3] Ms. Wyeth testified that the October 18, 2018 email was given to her, that she was not an addressee or "cc" of the email. A review of the October 18 and November 1 emails reveals that Ms. Wyeth was in fact an addressee of the email.

[4] The Notice of Levy pursuant to which PNC Bank acted shows as follows: (1) December 2, 2016 was the date MCSD received the Warrant from IDR; (2) the Notice of Levy was dated October 2, 2018; and (3) PNC Bank received the Notice of Levy on October 10, 2018. (Creditor's Exhibit 1.) The Court notes that the December 2, 2016 date described herein as (1) is on or after the date of the 2016 Letters whereby IDR requested a return of the Warrant.

[5] Ms. Wyeth testified that in response to the initial levy order sent (on an unknown date) to 15 different banks, PNC Bank responded to MCSD that Debtor did not have an account at such bank. Therefore, MCSD did not expect to receive funds from PNC Bank. (*See also* Creditor's Exhibit 3.)

Bank check. On or about November 21, 2018, the funds were returned. (Debtor's Exhibit B.) As a result of such levy, PNC Bank charged a $100 legal processing fee (Debtor's Exhibit A), and Debtor testified that she incurred an NSF charge of $40 with respect to the payment of her son's November 1, 2018 rent.

All totaled, $1,384.88 was taken from the bank accounts described above, and $1,260 has been returned to Debtor, leaving a balance of $124.88.[6] In addition to the late fees and charges described above, Debtor has also incurred attorney's fees of $3,200 (8 hours at $400/hour) and lost wages of $120 (8 hours at $15/hour) to pursue this matter.

*Arguments of the Parties*

Debtor argues that IDR, through its alleged collection agent MCSD, violated the automatic stay by levying on the three accounts.

IDR argues that it "did what it could and more" to recall the Warrant from MCSD in 2016 and 2017, and in any event the Warrant expired pursuant to the operation of state law because of the lapse of 120 days after issuance. Accordingly, IDR asserts that it did not willfully violate the automatic stay when MCSD took collection action pursuant to the purportedly returned and/or expired Warrant in contravention of IDR's directives.

*Standard of Review*

Debtor alleges that IDR willfully violated the automatic stay pursuant to § 362(k). The relevant portion of § 362(k) provides:

> (1) Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

To succeed on her § 362(k) claim, Debtor has the burden of establishing the following elements

---

[6]  There was no testimony as to what this amount represents. The Court surmises that it may be MCSD's collection fee.

by a preponderance of the evidence:

> (1) a bankruptcy petition was filed; (2) the aggrieved debtor is an "individual"; (3) the creditor had notice of the petition; (4) the creditor's actions were willful and violated the stay; and (5) the debtor is entitled to a form of relief provided by § 362(k).

*Ralph v. Forum Credit Union (In re Ralph)*, 2010 WL 2594947 at *3 (Bankr. S.D. Ind. 2010) (citing *Galmore v. Dykstra (In re Galmore)*, 390 B.R. 901, 907 (Bankr. N.D. Ind. 2008)). "For the violation to be 'willful', the creditor need only intend to commit the act that led to the violation; the debtor need not prove that the creditor specifically intended to violate the stay." *Id.* (citing *Galmore*, 390 B.R. at 907; *Kline v. Tiedemann (In re Kline)*, 424 B.R. 516, 524 (Bankr. D. N.M. 2010)). *See also Indiana Dep't of Revenue v. Williams (In re Williams)*, 301 B.R. 871 (S.D. Ind. 2003).

*Discussion*

As the Court summarized during the Hearing, the facts of this matter indicate that (1) IDR has a problem that needs to be corrected;[7] (2) sloppy communication between IDR and sheriff's offices tasked with collecting obligations owed to IDR leads to harm; and (3) MCSD deserves some of the blame. On November 8, 2018, the Court encouraged counsel for Debtor to make MCSD a party to this contested matter so that its culpability could be assessed. Debtor has to date declined to do so.

(A)     The Husband's Account:  Debtor has not provided any basis for why she should recover damages with respect to IDR's and/or MCSD's actions taken against the Husband's

---

[7] This problem appears to be ongoing. *See In re Hendrix*, Case No. 15-04003-JMC-13, docket nos. 18, 28 and 34, wherein interactions between IDR and MCSD gave rise to a motion for sanctions for violation of the automatic stay filed on June 16, 2015, which was granted. *See also In re Levell*, Case No. 17-04257-RLM-13, docket nos. 37, 38, 51 and 53; *In re Thompson*, Case No. 16-07114-JJG-13, docket no. 41; *Indiana Dep't of Revenue v. Williams*, 301 B.R. 871, 878-79 (S.D. Ind. 2003) ("The IDR has a duty to design a system so that a bankruptcy stay will override warrants, notices and any other attempts to collect pre-petition taxes owed that would otherwise be issued.").

Account. Debtor has not demonstrated that any of the funds levied from the Husband's Account are property of the estate protected by the stay of § 362(a); nor has Debtor otherwise articulated how the § 362 stay is applicable to the Husband's Account. Pursuant to the express language of § 362(k), damages may be recovered for a willful violation "of a stay provided <u>by this section</u>" (emphasis added). The only stay that the Court can identify as potentially applicable to Debtor's husband, a non-debtor, is the co-debtor stay of § 1301 which, if applicable, is not "a stay provided <u>by this section</u>" as set forth in § 362(k). Moreover, § 1301(a) stays action to collect a consumer debt, and the pre-petition tax debt at issue in this matter is not a consumer debt. *See In re Peterson*, 524 B.R. 808, 812 (Bankr. S.D. Ind. 2015). Accordingly, Debtor is not entitled to recover damages under § 362(k) for the levy against the Husband's Account, which the Court calculates as $252.23.[8]

    (B)    <u>Debtor's Joint Account at Old National Bank</u>: It is clear to the Court that Debtor has proved that the levy against Debtor's joint account at Old National Bank on or about October 9, 2018 violated the automatic stay, but whether IDR acted willfully is less clear, especially in light of contradictory evidence between IDR and MCSD that is material to the Court's determination of willfulness, such as:

---

[8] The Court recognizes that this conclusion may appear to conflict with the Court's prior ordering of IDR to "immediately use its best efforts to cause the Marion County Sheriff's Department to promptly release the levy of <u>Debtor's funds</u> taken from bank account(s) at Old National Bank on October 9, 2018 in the amounts of $252.23 and $872.65, and from bank account(s) at PNC Bank on October 31, 2018 in the amount of $260." (*See* Initial Order, pp. 1-2; emphasis added.) At the time the Initial Order was entered, the Court was under the impression that all funds levied were Debtor's. Upon further consideration and additional evidence, that turns out not to be the case with respect to the Husband's Account. Accordingly, the Court's conclusions in this order supplant any contradictory order in the Initial Order.

| IDR | MCSD |
|---|---|
| IDR requested a return of the Warrant on November 21, 2016 and December 2, 2016 via the 2016 Letters. | The Warrant was active because MCSD did not know that IDR requested a return of the Warrant until October 17, 2018. |
| The Warrant expired pursuant to state law because 120 days had elapsed since its issuance. | MCSD asked IDR to re-issue the Warrant in 2016 because the Warrant was being paid. |

The Court did not have the benefit of an IDR representative's testimony as to (a) communications between IDR and Debtor or her counsel, or (b) communications between IDR and MCSD as to the general process of MCSD's collecting on tax warrants for IDR's benefit, the Warrant and the communications specifically relating to this matter. Thus, the Court was left to judge the credibility of Ms. Wyeth's testimony (which was not always consistent with the documentary evidence) and to determine the weight the Court would give to each piece of evidence. In addition, because IDR failed to produce witnesses to explain IDR's conduct and/or communications, the Court is free to draw inferences, as the evidence allows, contrary to IDR's positions where the facts are in dispute or ambiguous.[9]

The Court finds that the Warrant may have been inactive because (a) IDR twice requested a return of the Warrant via the 2016 Letters, and/or (b) by operation of law because more than 120 days elapsed since the Warrant was issued. Nonetheless, the evidence shows that MCSD, in fact, continued its collection efforts with respect to the Warrant (*see* the Notice of Levy dated October 2, 2018 which shows that the Warrant was received by MCSD from IDR on December 2, 2016 (Creditor's Exhibit 1)) for reasons that are unclear to the Court from the evidence. Even so, MCSD is not the target of the Motion, so MCSD's post-petition collection efforts do not, in and of themselves, mean that IDR willfully violated the stay.

---

[9] *See Chicago College of Osteopathic Medicine v. George A. Fuller Co.*, 719 F.2d 1335, 1353 (7th Cir. 1983) for a discussion of the "missing witness" rule. Though the parties did not raise this issue during the Hearing, the Court believes that one or more IDR employees could have given important testimony relating to this matter and that the failure to call any such employee as a witness was not accounted for by IDR at the Hearing. Accordingly, the Court, as the trier of fact, may presume that testimony that would have been given would be unfavorable to IDR.

The Court finds and infers that IDR knew MCSD was continuing to collect on the Warrant after the Warrant may have become inactive.  Persuasive on this point were the 2017 Letters, which indicate that IDR had actual knowledge that MCSD was continuing to collect on the Warrant, even after IDR sent the 2016 Letters requesting a return of the Warrant:

- In the 2017 Letters, IDR does not direct MCSD to cease all collection activities on the Warrant.

- The content of the 2017 Letters does not indicate that IDR returned, would return or requested MCSD to return the payments to Debtor (and there was no other evidence on this point), which would have shown IDR's intent *not* to collect on the purportedly inactive Warrant.

- Rather, IDR acknowledges receipt of two payments on the Warrant from MCSD and simply notes that IDR will not pay MCSD a damages/collection fee because the allotted time for collection had expired.

The 2017 Letters are among the examples of "sloppy communication" that the Court was referring to at the Hearing.

The Court further finds and infers that IDR knew Debtor filed bankruptcy soon after June 15, 2018 but did not communicate to MCSD regarding Debtor's bankruptcy prior to October 18, 2018.  Had IDR communicated clearly with MCSD promptly after the June 15, 2018 petition date that Debtor had commenced a bankruptcy and that MCSD should withdraw all levies and instruct all banks not to act on levies previously issued, then the damage to Debtor would have been avoided.  Why IDR waited approximately four months to so communicate with MCSD is unknown by but very troubling to the Court.

The Court concludes that, because IDR took no timely steps to prevent post-petition

collections on the Warrant by MCSD even though IDR knew MCSD was engaging in collection activities on account of the purportedly inactive Warrant, IDR willfully violated the automatic stay. Therefore, Debtor is entitled to recover actual damages from IDR with respect to the levy against Debtor's joint account at Old National Bank on or about October 9, 2018, which the Court calculates as $1,193.65.[10]

(C)    Debtor's Joint Account at PNC Bank:  MCSD acknowledged receiving IDR's direction to stop collecting on the Warrant on or about October 17, 2018 due to Debtor's working with IDR's taxpayer advocate office. There is also evidence that MCSD knew of the bankruptcy as of October 18, 2018, via email from IDR to Ms. Wyeth, which would have stayed MCSD's collection activities vis-à-vis Debtor and property of the estate. Levies after October 18, 2018 represent a clear violation of the automatic stay, including the levy against Debtor's joint account at PNC Bank on or about October 31, 2018. As with Debtor's joint account at Old National Bank, the question here is whether IDR acted willfully.

The problem with the levies that occurred after October 18, 2018 is that, like a time-release poison, they were consequences of actions taken prior to that date that MCSD did not correct until it was too late to avoid damage to Debtor. As pointed out above, the communication from IDR to MCSD was inexcusably tardy to Debtor's prejudice. So, IDR must also bear the consequences for collections that occurred after IDR finally told MCSD of Debtor's bankruptcy but were set in motion before those communications.

Therefore, Debtor is entitled to recover actual damages from IDR with respect to the levy against Debtor's joint account at PNC Bank on or about October 31, 2018, which the Court

---

[10]    This amount is comprised of $872.65 taken from the account, the $75 legal order processing fee, $114 in NSF charges, and $132 in late fees.

calculates as $400.[11]

*Decision*

Based on the foregoing, the Court concludes that IDR willfully violated the automatic stay that directly led to funds being levied from Debtor's joint bank account at Old National Bank on or about October 9, 2018 and Debtor's joint bank account at PNC Bank on or about October 31, 2018. The Court calculates the damages as $1,193.65 for the October 9, 2018 Old National Bank levy, $400 for the October 31, 2018 PNC Bank levy, $120 for lost wages, and $3,200 for attorney fees, for a total award of $4,913.65.

IT IS THEREFORE ORDERED that IDR shall pay the sum of $4,913.65, less the $1,200 and any other sums already returned, to Debtor as actual damages, which shall be delivered to Debtor's counsel within 14 days of the date of this order.

IT IS FURTHER ORDERED that IDR shall file by April 17, 2019[12] a statement of intention (the "Statement") describing the steps it has taken, or is prepared to take, to ensure that violations of the automatic stay of the kind that occurred in this case are minimized to the extent of IDR's reasonable capability.

The Court, having found that certain of IDR's conduct in violating the automatic stay was willful, now takes the matter of punitive damages under advisement and reserves final ruling on punitive damages until the Court reviews and considers the Statement.

IT IS SO ORDERED.

# # #

---

[11] This amount is comprised of $260 taken from the account, the $100 legal processing fee and the $40 NSF charge.

[12] This date was extended from March 18, 2019 (the date set at the Hearing) to April 17, 2019 by separate order of the Court (Docket No. 79).